UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MICHAEL A. BURNHART, | ) | CASE NO. C06-0870-JLR |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| VICKI SHUMAKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff is a state prisoner who is currently confined at the Washington Corrections Center in Shelton, Washington. He filed this civil rights action under 42 U.S.C. § 1983, while incarcerated at the King County Regional Justice Center ("RJC") Detention Facility, to challenge classification decisions rendered by RJC classification personnel. Specifically, plaintiff complains about his transfer to close custody following his violation of institutional program rules. He suggests that the transfer was retaliatory, and that his confinement in close custody interfered with his right of access to the courts and exacerbated a medical condition.

Plaintiff identifies four defendants in his amended complaint: Vicki Shumaker, Sue Belt,

REPORT AND RECOMMENDATION
PAGE -1

Teri Hansen, and Brian O'Farrell. Defendant O'Farrell was recently dismissed from this action. The remaining defendants now move for summary judgment. Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendants' motion. Defendants' motion for summary judgment is now ripe for review. This Court, having reviewed defendants' motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted.

## FACTS

Every inmate booked into the RJC is classified in accordance with the Department of Adult and Juvenile Detention ("DAJD") Inmate Classification and Assessment Policy. (Dkt. No. 32 at 1-2 and Ex. A.) The purpose of the classification policy is to assess the housing needs of inmates and to assign them to appropriate housing locations within the facility. (Dkt. No. 32, Ex. A at 1.) Housing assignments are based on a number of factors including security level, behavior, medical needs, psychiatric needs, other special custody requirements, and legal standards. (*Id*.) A security level is assigned to each inmate based upon that inmate's criminal score and management risk score. (*See* Dkt. No. 32, Ex. B.) The criminal score is based upon factors such as seriousness of the offense, detainer status, escape history, conviction history, and incarceration experience. (*See id*. at 1-3.) The management risk score is based on behavior. (*See id*. at 4.)

Inmates may be assigned to one of five security levels: minimum, medium, close, close high, and maximum. (Dkt. No. 32 at 2 and Ex. B at 6.) Inmates assigned to medium security are assigned to E-Unit and have dayroom access outside their cells for seven and a half hours each day. (Dkt. No. 32 at 2.) E-Unit inmates have access to regular commissary and to regular reading

materials. (*Id.*) Inmates assigned to close custody are housed in D-Unit and have dayroom access outside their cells for three hours each day. D-Unit inmates also have access to regular commissary and to regular reading materials. (*Id.*)

DAJD classification personnel may apply an override to an inmate's assigned security level based upon certain criteria set forth in DAJD policy. (*See* Dkt. No. 32, Ex. C.) An override refers to an increase or decrease in the assigned security level based upon consideration of factors such as behavior, case notoriety, type of criminal history or risk. (*Id.*) Pursuant to policy, downward overrides are conditioned on ongoing good behavior and are to be removed if an inmate violates jail rules or engages in documented misconduct. (*See id.*)

At the time plaintiff was booked into the RJC on May 24, 2005, his criminal score was calculated at 3 and his risk management score was calculated at 1. (*See* Dkt. No. 32, Ex. D at 2.) The security level corresponding with that combination of scores was close custody. (*See id.*, Ex. B at 6.) However, plaintiff received an override to medium custody. (*See id.*, Ex. D at 2.) On June 9, 2006, defendant Shumaker revoked plaintiff's override to medium security because of multiple infractions incurred by plaintiff during his booking. (*Id.*, Ex. J.) On June 12, 2006, defendant Belt authorized plaintiff to be moved from E-Unit, where medium security inmates are housed, to D-Unit, where close security inmates are housed. (*Id.*, Ex. K.)

Following his transfer to D-Unit, plaintiff submitted a number of kites and grievances protesting the revocation of the override, and expressing his desire to be returned to E-Unit. (*See id.*, Exs. L, M, N, O, P, and Q.) Defendants Shumaker and Hansen responded to these various kites by explaining the override policy and the reason for the revocation of plaintiff's override to medium custody. (*Id.*) On August 4, 2006, the override to medium custody was reinstated

REPORT AND RECOMMENDATION
PAGE -3

because plaintiff had remained infraction free for 43 days. (*Id.*, Ex. R.)

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine issue as to any material fact" such that "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is a fact relevant to the outcome of the pending action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues of material fact are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on summary judgment, the court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983

is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Classification

When a pre-trial detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979). Such challenges arise under the Fourteenth Amendment Due Process Clause. *Id*. at 535. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537.

The test for identifying unconstitutional punishment at the pretrial stage of a criminal proceeding requires a court to examine "whether there was an express intent to punish, or 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 538). "For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Id.* at 1029. Further, "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030.

"[M]aintaining institutional security and preserving internal order and discipline are

essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell*, 441 U.S. at 546. *Accord Jones*, 393 F.3d at 932 ("Legitimate, non-punitive government interests include ensuring a detainee's presence at trial, maintaining jail security, and effective management of a detention facility.")  Moreover, corrections administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547.

Plaintiff appears to allege in his amended complaint that it was improper for defendants to raise his security level to close custody and to transfer him to D-Unit following his violation of program rules in early June 2006. (*See* Dkt. No. 6 at 3.) Plaintiff contends that he was always a medium custody inmate and he suggests that his rule violations did not warrant an increase in his security level. (Dkt. No. 6 at 7-8.)

While plaintiff was apparently housed in a medium custody unit (E-Unit) from the time of his booking in May 2005, until his transfer to a close custody unit (D-Unit) in June 2006, the record makes clear that plaintiff was at all times a close custody inmate who had received an override to medium custody. (*See* Dkt. No. 32, Exs. B and D.) When plaintiff violated program rules in early June 2006, institutional classification policies dictated that his override to medium custody be revoked. (*See id.*, Ex. C.) The override was revoked and plaintiff was transferred to a housing unit commensurate with his security level. (*See id.*, Exs. J and K.)

The record supports the conclusion that the policy pursuant to which plaintiff's medium custody status was revoked, and the manner in which that policy was executed, were consistent with constitutional principles. Plaintiff offers no evidence demonstrating that the revocation of

REPORT AND RECOMMENDATION
PAGE -6

his override to medium custody, and his subsequent transfer to a close custody housing unit, amounted to "punishment" in the constitutional sense. It appears instead that defendants employed their classification system to preserve internal order and discipline. This they were entitled to do. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's classification claim.

## Retaliation

Plaintiff also suggests in his amended complaint that his transfer to close custody is attributable to his filing of a previous lawsuit against other RJC employees. (*See* Dkt. No. 6 at 3.) To prevail on a retaliation claim under § 1983, plaintiff must show he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni.* 31 F.3d 813, 816 (9th Cir. 1994). The Court evaluates a retaliation claim in light of the deference accorded prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

Plaintiff makes no showing that defendants' actions did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt*, 65 F.3d at 806 ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.") Plaintiff likewise makes no showing that his First Amendment rights were in any way chilled by the actions of defendants. *See Resnick*, 213 F.3d at 449. Accordingly, defendants are entitled to summary judgment with respect to any claim that plaintiff's transfer to close custody was retaliatory in nature.

his override to medium custody, and his subsequent transfer to a close custody housing unit, amounted to "punishment" in the constitutional sense. It appears instead that defendants employed their classification system to preserve internal order and discipline. This they were entitled to do. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's classification claim.

## Retaliation

Plaintiff also suggests in his amended complaint that his transfer to close custody is attributable to his filing of a previous lawsuit against other RJC employees. (*See* Dkt. No. 6 at 3.) To prevail on a retaliation claim under § 1983, plaintiff must show he was retaliated against for exercising his constitutional rights, that the retaliatory action chilled the exercise of his First Amendment rights, and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni.* 31 F.3d 813, 816 (9th Cir. 1994). The Court evaluates a retaliation claim in light of the deference accorded prison officials. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

Plaintiff makes no showing that defendants' actions did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt*, 65 F.3d at 806 ("The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains.") Plaintiff likewise makes no showing that his First Amendment rights were in any way chilled by the actions of defendants. *See Resnick*, 213 F.3d at 449. Accordingly, defendants are entitled to summary judgment with respect to any claim that plaintiff's transfer to close custody was retaliatory in nature.

Medical Claim

Plaintiff appears to also assert in his amended complaint that his confinement in the close custody unit either created, or exacerbated, a medical condition. More specifically, plaintiff contends that being locked down 21 hours per day caused him severe back pain, that defendants refused to "help" alleviate this condition, and that this "situation" amounted to cruel and unusual punishment. (Dkt. No. 6 at 3.)

Because plaintiff was a pretrial detainee at the time his claims arose, any claim of inadequate medical care arises under the Due Process Clause of the Fourteenth Amendment and not under the Eighth Amendment prohibition against cruel and unusual punishment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). However, the Ninth Circuit has made clear that, with respect to medical needs, "the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Carnell*, 74 F.3d at 979.)

A medical need is deemed serious if the failure to treat the condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to establish deliberate indifference, a plaintiff must show a purposeful act or failure to act on the part of prison officials. *McGuckin*, 974 F. 2d at 1060.

Plaintiff has offered no evidence in these proceedings showing that he suffered from a serious medical need or that the named defendants demonstrated deliberate indifference to any such need. Accordingly, defendants are entitled to summary judgment with respect to any

intended medical claim.

## Access to Courts

Finally, plaintiff alleges in his amended complaint that his transfer to close custody interfered with his ability to defend himself in his state court criminal proceedings. (Dkt. No. 6 at 3.) Plaintiff asserts that he was a pro se detainee with no standby counsel and that the restrictions associated with housing in a close custody unit limited the amount of time during which he had access to a telephone. (*Id*.)

While inmates have a constitutional right of access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), they must show actual injury in order to pursue an access to courts claim, *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Plaintiff offers no evidence that he suffered any actual, concrete injury to his right of access as a result of his incarceration in the close custody housing unit. Accordingly, plaintiff has not adequately alleged a cause of action for deprivation of his right of access to the courts and defendants are therefore entitled to summary judgment with respect to that claim.

## CONCLUSION

For the reasons set forth above, this Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's amended complaint and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of May, 2007.

Mary Alice Theiler
United States Magistrate Judge